UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES O'DONNELL,

                    Petitioner,

        – *against* –

THE PEOPLE OF THE STATE OF NEW
YORK,

                    Respondent.

**OPINION & ORDER**

18-cv-6414 (ER)

RAMOS, D.J.:

James O'Donnell, proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 5, 2018.  Doc. 1.  This Court referred the petition to Magistrate Judge Debra C. Freeman on August 10, 2018.  Doc. 5.

On November 18, 2021, Judge Freeman issued a Report and Recommendation ("R&R") recommending that the Court dismiss the petition in its entirety as untimely. Doc. 34.  O'Donnell timely filed his written objections to the R&R on December 29, 2021.  Doc. 39.  Respondent replied on April 1, 2022.  Doc. 47.  For the reasons stated herein, the Court DENIES the habeas petition.

## I.    BACKGROUND[1]

### A.  The Arrest, Questioning, and Police Search

The factual background and procedural history relevant to O'Donnell's petition are set forth in detail in the R&R, familiarity with which is assumed.  *See* Doc. 47 at 3–9. The Court sets forth below those facts necessary to resolve the objections to the R&R.

New York City Police Officer Edward Thompson and his partner, Officer John Sivori, gave the following account of what occurred during O'Donnell's arrest and after his transportation to the police station:

---

[1] Unless otherwise noted, all facts are taken from Magistrate Judge Freeman's R&R, Doc. 47.

At approximately 2:00 a.m., on March 16, 2010, Officers Thompson and Sivori were on duty in the Greenwich Village neighborhood of Manhattan when Thompson noticed O'Donnell trying to gain access into a construction site at 814 Broadway by appearing to pick the lock.  As soon as Thompson observed O'Donnell start to walk away from the site (which O'Donnell did after looking in the direction of a security guard) he got out of the police car and started following O'Donnell on foot.  After walking for about two blocks, Thompson saw O'Donnell go into a deli on University Place.

Thompson and Sivori (who separately drove to the location of the deli) stopped O'Donnell when he exited the deli.  They identified themselves as police officers and Thompson asked him what he was doing, and why he was "walking [] aimlessly around." Although Thompson had witnessed him trying to get into the building by attempting to pick the lock, O'Donnell responded that he was "down there just to get a cup of coffee." Thompson thought this response was unusual because O'Donnell told him that he lived uptown, and because O'Donnell had tea, rather than coffee, in his hand.

O'Donnell then reportedly told the officers that he had been in the military, and Sivori asked if O'Donnell had any weapons on him.  O'Donnell responded that he had a knife on him and indicated that it was on his right side.  Thompson and Sivori proceeded to search him, and found four daggers[2] in a sheath on the right side of his belt, as well as a loaded gun in his front waistband and four more daggers in another sheath on his left side.  Thompson also recovered another magazine from the side pocket of O'Donnell's pants.  In addition, the officers recovered a silencer and a laptop from his backpack.

---

[2] A dagger has a double serrated edge whereas a knife has only one sharp edge.

After the weapons were recovered, he was placed under arrest, and other police officers who had responded to the scene transported him to the Ninth Precinct.  The same day, at approximately 5:00 a.m., O'Donnell was issued *Miranda* warnings, both verbally and in writing.  *See* Pretrial Tr. 85:2–14, Doc. 19.  Officers Sivori and Thompson were present.  *Id.*  Detective Edward Lozada was also present and conducted the interview.  *Id.* at 14; *see also* 5:00 a.m. Miranda Warnings, Doc. 20 at 69.  Lozada, along with Thompson and O'Donnell signed the form that contained the written *Miranda* warnings. *Id.*  O'Donnell indicated that he did not want to give a statement, but he did not ask for an attorney at that time.

At approximately 10:30 a.m., Detective Brian Stamm, of the Intelligence Division, arrived at the precinct to conduct a "threat assessment" regarding flyers and artwork recovered from O'Donnell's backpack that were "threatening" and "derogatory" toward Mayor Bloomberg.  Before questioning O'Donnell, Stamm did not re-issue *Miranda* warnings, however, O'Donnell responded to Stamm's questions, including making statements regarding his past and what brought him to New York ("the first statement").  O'Donnell also told Stamm that he had additional weapons in a storage facility, and signed a form giving his consent to search the facility.

At approximately 3:00 p.m., police officers, once again, issued *Miranda* warnings to O'Donnell, and he then gave both a verbal and a written statement ("the second statement").  *See* Doc. 20 at 70–72.  O'Donnell again told the officers that he had additional weapons in a storage facility.  At approximately 11:57 p.m., O'Donnell was transported to the District Attorney's Office for another interview, where Assistant

District Attorney Robert Walker and Officer Thompson were present.[3]  *Miranda* warnings were again administered, and O'Donnell made a statement that was video-taped ("the third statement").  On March 17, 2010, officers searched O'Donnell's storage unit and recovered, among other items, weapons and weapon accessories.

### B.  Suppression Hearing

A suppression hearing[4] was held on March 12 and 13, 2012, before the Honorable Lewis Bart Stone in Supreme Court, New York County.  The court held that the weapons recovered from O'Donnell and the storage unit were seized lawfully and, accordingly, could be introduced into evidence.  As for O'Donnell's various statements, the court suppressed the first statement, made to Detective Stamm at approximately 10:30 a.m., because Stamm failed to re-issue *Miranda* warnings before questioning, but that all other statements made by O'Donnell while in police custody were deemed to be admissible.

### C.  Trial and Sentencing

O'Donnell's trial was conducted from April 17 to April 24, 2012.[5]  A total of 18 charges were submitted to the jury for deliberation:  four counts of criminal possession of a weapon in the second degree, three counts of criminal possession of a weapon in the third degree, and eleven counts of criminal possession of a weapon in the fourth degree.[6]

---

[3] Assistant District Attorney Walker represented the People at the suppression hearing and trial, and he did not testify.

[4] This hearing was held pursuant to *Mapp v. Ohio*, 367 U.S. 643 (1961), to determine whether physical evidence sought to be used against O'Donnell was obtained illegally, and *People v. Huntley*, 15 N.Y.2d 72 (1965), to determine whether any statements made by O'Donnell should be suppressed.

[5] The sentencing paperwork erroneously states that a plea has been entered when in fact O'Donnell plead not guilty to all charges and was convicted by a jury.  *See* Uniform Sentence & Commitment, Doc. 20 at 12–13.

[6] The trial court did not submit two counts to the jury:  one count of fourth-degree weapons possession (relating to the possession of an electronic stun gun); and one count of possession of ammunition.

After the case had been submitted to the jury, but before the jury's deliberations were completed, the prosecution informed the court that two jurors had been discussing the case in the elevator, and the defense moved for a mistrial.  The trial judge conducted an inquiry and spoke with both jurors.  The first juror told the trial judge that she "talked about timing, but nothing in [] detail in regard to the case."  *See* State Court Transcript, Doc. 19-2 at 141.  The second juror confirmed that the conversation was about the trial schedule ("I think we were talking about hopefully getting out before lunch time today."). *Id.* at 143.  The court determined that "the exchange, while unfortunate and probably ill advised, did not constitute deliberations," and denied the motion for a mistrial.  *Id.* at 150.

The jury reached a verdict on April 24, 2012, finding O'Donnell guilty of three counts of criminal possession of a weapon in the second degree, three counts of criminal possession of a weapon in the third degree, and eight counts of criminal possession of a weapon in the fourth degree.[7]  In their sentencing submissions, the prosecution asked for the maximum penalty allowable and the defense argued for a lenient sentence, arguing that there was no evidence O'Donnell was plotting to use his weapons unlawfully and that he had no prior record.  *Id.* at 175.  Because of this, his defense counsel suggested that he be given a sentence of five years to run concurrently.  *Id.* at 176.

O'Donnell was sentenced on December 14, 2012 to an aggregate term of 15 years of imprisonment, to be followed by five years of post-release supervision.  An error in his sentencing with respect to certain counts (on which he was sentenced to determinate terms of imprisonment, but was entitled, under the law, to indeterminate terms) resulted

---

[7] Four counts—one count of criminal possession of a weapon in the second degree, and three counts of criminal possession of a weapon in the fourth degree—were dismissed on motion of the People because the jury did not reach a unanimous verdict.  Doc. 19-2 at 161.

in his being re-sentenced on May 1, 2013, before Supreme Court Justice Jill Konviser. However, as the sentences on all counts were set to run concurrently, and as O'Donnell's sentence on the primary offense (each of the three second-degree weapon possession counts) remained a determinate sentence of 15 years' incarceration, the re-sentencing did not affect his aggregate prison term.

### D.  Direct Appeal

On January 14, 2013, O'Donnell filed a notice of appeal to the Appellate Division, First Department, but, as noted above, he was re-sentenced on May 1, 2013, and he did not file his appellate brief until more than a year later, on January 27, 2014. Doc. 20 at 6.  On appeal, O'Donnell challenged his conviction on the grounds that:  (1) the search of his person was unlawful; (2) the trial court erroneously denied his motion for a mistrial on the basis of improper jury deliberations; and (3) his sentence was excessive.  The Appellate Division affirmed the judgment of conviction on November 18, 2014, *see People v. O'Donnell*, 122 A.D.3d 475 (1st Dep't 2014), and the Court of Appeals denied leave to appeal on January 20, 2015.  Doc. 20 at 252.

### E.  CPL § 440.10 Motion

On November 21, 2015, O'Donnell filed a *pro se* motion to vacate his conviction pursuant to § 440.10 of the New York Criminal Procedure Law ("§ 440.10 motion"). Doc. 20 at 253.  In that motion, he claimed that his trial counsel, Howard Simmons, had provided ineffective assistance by generally being unprepared for trial and not diligently representing his interests.  The state court denied the motion on February 22, 2017. O'Donnell then filed a motion for leave to appeal to the Appellate Division, First Department, on April 27, 2017.  The Appellate Division denied leave to appeal by a

decision dated October 6, 2017, and entered on October 19, 2017.  *See* Certificate

Denying Leave, Doc. 20-1 at 43.

### F.  Federal Habeas Petition

O'Donnell filed the instant petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 on July 5, 2018.  Doc. 1 at 12.  He claims that:  (1) the police unlawfully

seized and searched him; (2) the police violated his *Miranda* rights; (3) the trial court

erred in declining to grant a mistrial on the basis of the jurors' improper deliberations; (4)

his counsel was ineffective for failing to correct a typographical error in his sentencing

paperwork, in addition to other shortcomings; (5) his sentence is unjust; and (6) the New

York District Attorney's Office failed to properly serve him with its opposition papers in

response to his state post-conviction motion.  Doc. 1 at 7–9.  On August 10, 2018, this

Court referred the petition to Magistrate Judge Debra C. Freeman.  Doc. 5.  Respondent

filed an opposition on January 4, 2019, Doc. 18, and O'Donnell filed his reply on

February 26, 2019.  Doc. 25.  On November 18, 2021, Judge Freeman issued the R&R

recommending that the Court dismiss the petition in its entirety because the claims are

time-barred and O'Donnell is not otherwise entitled to relief from the statute of

limitations.  Doc. 34.  Specifically, Judge Freeman noted that the state court proceedings

on O'Donnell's direct appeal ended on January 20, 2015, and that although he claimed to

have filed a petition for a *writ of certiorari* to the United States Supreme Court, there was

no indication that any such petition was ever docketed.  *Id.* at 10–12.  Even granting

O'Donnell the benefit of statutory tolling for the period when his § 440.10 motion was

pending before the state courts, Judge Freeman determined that the instant petition, dated

July 5, 2018, was beyond the statute of limitations by approximately four months.  *Id.* at

11–13.  Judge Freeman further found that O'Donnell had not established that he was

entitled to equitable tolling or demonstrated a miscarriage of justice warranting an

equitable exception to the time-bar.  *Id.* at 14–17.  O'Donnell timely filed his written

objections to the R&R on December 29, 2021.  Doc. 39.  Respondent replied on April 1, 2022.  Doc. 47.

## II.  LEGAL STANDARD

### A.  AEDPA Review of the State Court Proceedings

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2). This deference is required under the AEDPA if the petitioner's claim "was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); *see Bell v. Miller*, 500 F.3d 149, 154–55 (2d Cir. 2007).

"Th[e] statutory phrase ['clearly established Federal law, as determined by the Supreme Court of the United States,'] refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 365 (2000).  In order for a federal court to find that the state court's application of Supreme Court precedent was unreasonable, the decision must be objectively unreasonable rather than simply incorrect or erroneous.  *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  The factual findings made by state courts are presumed to be correct under the AEDPA, and petitioner has the burden to rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Nelson v. Walker,* 121 F.3d 828, 833 n.4 (2d Cir. 1997).

Habeas petitions under 28 U.S.C. § 2254, must be filed within one year of the latest of four dates specified by statute:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D); *see also Williams v. Artuz*, 237 F.3d 147, 150–51 (2d Cir. 2001) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] time to seek direct review via certiorari"). The limitations period is tolled during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2).

### B. Review of Magistrate Judge's R&R

A district court reviewing a magistrate judge's R&R "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise written objections to the R&R within fourteen days after being served with a copy. *Id.*; Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the R&R to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the R&R to which no party has timely objected, provided no clear error is apparent from the

face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) (citations omitted). The district court will also review the R&R for clear error where a party's objections are "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted); *see also Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011) ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error."). Moreover, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).

## III.    DISCUSSION

Magistrate Judge Freeman held that because O'Donnell's petition was untimely, the Court need not reach the merits. Doc. 34 at 2. In a footnote Judge Freeman also noted that O'Donnell had failed to properly name the warden of his correctional facility as the respondent in this matter, but that the defect could easily be cured by amendment. *Id.* at 1 n.1. O'Donnell objects to Judge Freeman's R&R in its entirety. Doc. 39 at 1. He alleges that: (1) the People of the State of New York are the proper respondent in this matter; (2) the officers' testimony at the suppression hearing was "pure conjecture" and a "total fabrication" that should not have been relied upon; (3) his petition alleged several violations of his constitutional rights; and (4) his petition is not untimely, because he mailed a petition for a *writ of certiorari* to the United States Supreme Court "in mid-March 2015," and because of delays in his receipt of mail from the state courts were even more extensive than those alleged in the petition. *Id.* at 1–7.

As set forth below, the Court adopts the R&R in its entirety. Because the basis for the denial of O'Donnell's petition was that it was not timely, the Court will address that objection first. Nevertheless, in an abundance of caution, the Court has analyzed the merits of O'Donnell's claims and, for the reasons set forth below, finds each of them to be without merit.

### A. Timeliness of Petition

In order to be considered timely, O'Donnell's habeas petition must have been filed by March 5, 2018, which, including the time periods in which the statute of limitations was tolled, is one year after the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. The state court record indicates that the judgment of conviction became final on April 20, 2015—90 days after the Court of Appeals denied his application for leave to appeal from the First Department's affirmance of his conviction. Doc. 20 at 252. The one-year statute of limitations then ran for 215 days before it was tolled again by the filing of O'Donnell's § 440.10 motion on November 21, 2015. Doc. 20 at 296. The statute remained tolled until October 6, 2017, when the Appellate Division denied O'Donnell leave to appeal from the trial court's decision on that motion.[8] Doc. 20-1 at 43.

---

[8] As noted above, the Appellate Division's decision denying leave is dated October 6, 2017 but marked as "entered" on October 19, 2017. Doc 20-1 at 43. Respondent argues that October 6, 2017 is the operative date for ending the tolling period because, "[a]t the moment Justice Richter signed the order denying leave to appeal, 'the door of the New York Court of Appeals was closed and further appellate review was unavailable.'" Doc. 18-1 at 15 n.3 (citing *Geraci v. Senkowski*, 211 F.3d 6, 9 (2d Cir. 2000)). As Respondent further correctly notes, however, "even if Petitioner were entitled to tolling until the entry of Justice Richter's order on October 19, 2017," the difference of only 13 days would not be sufficient to render the Petition timely. *Id.*

With the conclusion of the proceedings on his § 440.10 motion, O'Donnell then had 150 days, until March 5, 2018, in which to file a federal habeas petition.[9]  O'Donnell filed his petition on July 5, 2018, 122 days (approximately four months) after the expiration of the limitations period.  Doc. 1 at 12.

### 1.   United States Supreme Court Writ of Certiorari

In the R&R, Judge Freeman held that despite O'Donnell's assertion to the contrary, there is no evidence in the record that he ever actually filed a *writ of certiorari* with the U.S. Supreme Court.  Doc. 34 at 11–12.  Accordingly, in the absence of this evidence, Judge Freeman recommended that the Court should find that O'Donnell's petition was not filed until months after the applicable limitations period expired.  Moreover, the R&R concluded that O'Donnell was not entitled to equitable tolling because none of the reasons that Judge Freeman construed O'Donnell to have argued regarding delays in his communications with the state courts were sufficient to justify equitable tolling. [10]  *Id.* at 14.  Lastly, the R&R determined that O'Donnell failed to demonstrate that an equitable exception to the statutory time bar should be made in this case because he did not come forward with any evidence of actual innocence.  *Id.* at 16–

---

[9] The 150 days remaining to file a federal habeas petition was calculated by subtracting the 215 days that had already been counted towards the one-year statute of limitations.

[10] O'Donnell did not explicitly make an equitable-tolling argument, but, in light of the Court's obligation to construe a *pro se* petition liberally, Judge Freeman construed his submissions to request equitable tolling. Specifically, the R&R considered O'Donnell to have argued that:  (1) the January 2015 decision of the New York State Court of Appeals denying him leave to appeal from the Appellate Division's affirmance of his conviction took a week to reach him; (2) he did not receive the decision of the Appellate Division denying leave to appeal from the trial court's decision on the § 440.10 motion "until early February 2018, after [O'Donnell] wrote [to the] court to learn the status of his case"; and (3) the § 440.10 motion was filed "on such a late date" because the copy machine at the correctional facility had been broken for two months. Doc. 1 at 20–21.

17.  Thus, Judge Freeman recommended that this Court dismiss the petition as untimely without reaching the merits of O'Donnell's claims.

O'Donnell reasserts that he did file petition for a *writ of certiorari* in mid-March of 2015 and that this should have tolled the statute.  Doc. 39 at 5–7.  As O'Donnell merely rehashes his argument, the Court needs only to review the R&R for clear error. *Genao*, 2011 WL 924202, at *1; *see also Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009); 28 U.S.C. §2254(b)(1).  The R&R listed the many futile attempts to obtain evidence that O'Donnell had filed a *writ of certiorari* with the U.S. Supreme Court, including Respondent's thorough search of the Supreme Court's docket, Respondent's two telephone call to the Supreme Court Clerk, and even the District Court's independent search using LEXIS and Westlaw.  Doc. 34 at 12.  There is no clear error in this analysis.  Further, O'Donnell merely cites to his own briefing and offers no new evidence to prove that he did successfully file a petition for a *writ of certiorari*. Accordingly, the Court adopts the conclusion of the R&R that the petition is time-barred and the petition may be denied on this basis alone.

### 2.  *Corrected Date of Receipt of Appellate Division's Decision*

The R&R clearly detailed the dates on which all appellate documents were filed and how the one-year statute expired on March, 5, 2018.  In his petition, O'Donnell originally stated that he received the decision from the Appellate Division "6 months after it had been decided," in February of 2018.  Doc. 1 at 11.  In his objection to the R&R, O'Donnell now asserts, for the first time, that he did not receive the decision from the Appellate Division until May 16, 2018.  Doc. 39 at 6.  In support of this amendment, he submits a photocopy of a document that he labeled as "Legal Mail Signature Book

Cape Vincent Correctional Facility." *Id.* at 11.  The document shows a hand-written

entry for mail received on May 16, 2018 from the "Supreme Court [of New York]"

received by O'Donnell.  Additionally, O'Donnell submits an envelope from the

"Supreme Court Appellate Division, First Department" postmarked as received on May

14, 2018. [11]  *Id.* at 12.

However, "[i]n this circuit, it is established law that a district judge will not

consider new arguments raised in objections to a magistrate judge's report and

recommendation that could have been raised before the magistrate but were not."

*Gladden*, 394 F. Supp. 3d at 480 (citation omitted).  Even assuming the proffered

documents are evidence that he received the Appellate Division's Opinion on May 16,

2018, O'Donnell's failure to present this evidence to Judge Freeman is fatal to his claim.

O'Donnell had the opportunity to provide the evidence in his reply to Respondent's

response to the habeas petition, but failed to do so.  *See generally* Doc. 25 at 25–36.

O'Donnell has not offered a satisfactory reason for failing to provide the envelope

at that time, stating only that he "would like to make a correction in the date he received

the decision from New York County Court of Appeals: 1st Department.  It was not early

February 2018 as the petitioner has claimed … but on May 16, 2018" and asking the

Court to "note the requested correction."  Doc. 39 at 6.  The Court declines to do so.

Even if the Court agreed to consider O'Donnell's new argument—which it does

not—it would deny the habeas petition because O'Donnell's remaining claims lack merit.

---

[11] The Court notes that the mail log entry states that the letter is from the "Supreme Court of New York," not the Appellate Division.  However, the Court accepts O'Donnell's representation that the Appellate Division's decision was logged as being from the Supreme Court of New York ("[T]he petitioner asserts that he did not receive the decision from the Appellate Division: First Department until May 16, 2019, for which the petitioner has a copy of his signature in the Legal Mail Log… dated May 16, 2018… and a copy of the envelope it arrived in, postmarked May 14, 2018."  Doc. 39 at 6.

### B. Ineffective Assistance of Counsel

*1. Failure to Object to a Typographical Error in O'Donnell' Sentencing Report*

O'Donnell claims that a typographical error in his sentencing paperwork (stating that a plea had been entered when in fact he plead not guilty to all charges had a jury trial) entitles him to relief. Doc. 1 at 4; *see also* Doc. 20 at 12–13. According to O'Donnell, his appellate attorney declined to move to correct the mistake because it was "'understood' by the Court, and therefore unnecessary to enter into the record[.]" Doc. 1 at 4. Indeed, the Appellate Division explicitly acknowledged that O'Donnell was convicted following a jury trial. *See* Appellate Division's November 18, 2014 Decision, Doc. 20 at 238–40. Moreover, O'Donnell does not point to an instance in which any court erroneously believed he pled guilty, and there is no indication in the record that he was treated as though he had done so. In any event, because O'Donnell does not show any prejudice he has suffered due to this typographical error, the Court denies this claim for habeas relief. *See Tenace v. Senkowski*, No. 03 Civ. 900, 2007 WL 2874441, at *2, 5 (N.D.N.Y. Sept. 27, 2007) (denying the petitioner's claims for habeas relief based on a typographical error because the petitioner had not shown any prejudice).

*2. Other Ineffectiveness Claims*

O'Donnell also claims to have received ineffective assistance of counsel on the basis that Simmons (a) did not move to dismiss on the basis of a violation of his speedy-trial rights; (b) did not meet with him frequently enough; (c) failed to prevent press photography of court proceedings; (d) failed to cite caselaw during a pre-trial hearing; (e) failed to call the prosecutor as a witness and call other, unspecified, "important witnesses;" (f) failed to object to the admissibility of his video recorded statement to police; (g) tried to coerce him into pleading guilty; (h) did not accept the trial court's

offer to consolidate the charges; (i) failed to review the discovery material prior to trial; (j) lacked an effective strategy; (k) spoke too loudly during an attorney-client conference during trial; (l) entered a "secret guilty plea" on his behalf; (m) failed to make an argument at sentencing; and (n) had a conflict of interest related to the political significance of his trial. Doc. 1 at 5–6. The state court rejected all of these claims on the merits, holding that the contentions either lacked any factual basis or did not demonstrate ineffectiveness.

      *a. Counsel's failure to move to dismiss on the basis of a speedy-trial violation*

    O'Donnell claims that his right to a speedy trial was denied. The state court considered this argument and concluded that Simmons was not ineffective for "for failing to make a motion which [had] little or no chance of success." *See People v. Caban*, 5 N.Y.3d 143, 152 (2005). The Court agrees.

    To determine when the right to a speedy trial has been denied, courts must weigh four factors: the length of the delay, the reason for the delay, the petitioner's assertion of his right, and whether the delay wrought any prejudice to the defense. *Barker v. Wingo*, 407 U.S. 514 (1972). O'Donnell only addresses the first *Barker* factor with his allegation that it took "over 18 months" in adjournments to begin the trial. Doc. 1 at 5. In his § 440.10 motion, O'Donnell also noted that approximately 25 months passed between his arrest and his trial, and that in 15 months of pre-hearing proceedings his counsel failed to file a motion for speedy trial. Doc. 20 at 355–56. While a delay approaching a year triggers the *Barker* analysis, courts must also weigh the other three factors. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

The *Barker* test weighs "the conduct of both the prosecution and the defendant," for the delay factor. *Barker* at 530. O'Donnell alleges that his counsel "made no attempt to gain days for the defen[s]e" when the prosecution took 120 days for DNA analysis of the weapons. *See* Doc. 20 at 259. O'Donnell does not argue that the prosecution's delay in performing the DNA analysis of the weapons was an effort to gain a tactical advantage and Respondent argues that the DNA analysis was a legitimate reason to delay the trial.

While "a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily." *Barker* at 531; *see also United States v. Black*, 918 F.3d 243, 260 (2d Cir. 2019) ("[N]egligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense."). "The Sixth Amendment is rarely violated by [a] … delay that serves some legitimate government purpose." *United States v. Moreno*, 789 F.3d 72, 79 (2d Cir. 2015).

The Court agrees that there was a legitimate government interest in ascertaining whether the weapons could be linked to O'Donnell through DNA testing. *See Maryland v. King*, 569 U.S. 435, 436 (2013) (discussing the substantial government interest in the need for law enforcement officers to accurately process and identify the persons and possessions they must take into custody).

Further, O'Donnell also contributed to the delay by moving to suppress evidence. *See Barker* at 529 ("[I]f delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine" even if the delay was for the purpose of litigating a speedy-trial claim). The Supreme Court has made clear that "delays caused by defense counsel are properly attributed to the defendant, even where counsel is

assigned." *Vermont v. Brillon*, 556 U.S. 81, 94 (2009).  O'Donnell has thus failed to satisfy the second *Barker* factor.

As to O'Donnell's diligence in asserting his rights, he claims to have instructed trial counsel in February 2012 to file a motion for a violation of his speedy trial rights. Doc. 25 at 14.  O'Donnell does not allege that he asked his lawyer to make a speedy trial motion at any other time.  While a defendant is not required to affirmatively assert this right, *Barker* at 528, this factor will be significant only if a strong assertion was made and ignored.  *Brown v. Perez*, No. 13 Civ. 4615 (JPO), 2013 WL 5913306, at *9 (S.D.N.Y. Oct. 31, 2013), *report and recommendation adopted*, No. 13 Civ. 4615 (JPO), 2014 WL 5343309 (S.D.N.Y. Oct. 21, 2014).  Because O'Donnell did not make a strong assertion, the third factor weighs against O'Donnell.

The last factor, prejudice to the defendant, similarly weighs against O'Donnell. "Prejudice… should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect[:] ... (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  *Barker* at 532.  O'Donnell does not articulate any particular prejudice that arose from the delay or explain how the delay affected his ability to present a defense.  For instance, that as a result of the delay the defense was unable to call certain witnesses, or that the length of the delay caused witnesses to fail to recall exactly what occurred.  *See People v. Taranovich*, 37 N.Y.2d 442, 447, (1975); *see also Barker* at 532 ("If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.").

In sum, because O'Donnell's speedy trial rights had not been violated, any motion by his attorney to that effect would have been futile.

### b. *Counsel's failure to meet more frequently with O'Donnell*

O'Donnell claims that Simmons was ineffective because he met with him "outside of the Court only twice, once in a video conference and once by telephone, to discuss the case." Doc. 1 at 5. In his § 440.10 motion, O'Donnell also notes that those two in-person meetings were "in the bullpen, directly before court appearances for 3 to 4 minutes at a time." Doc. 20 at 258. The state court concluded that O'Donnell had "not shown that the attorney's behavior fell below professional standards or that he was prejudiced by the action in question." Doc. 20-1 at 37. In the instant petition O'Donnell, again, fails to identify any manner in which his defense would have benefited from additional or longer conversations with Simmons and "courts have held that the brevity of consultation time between a defendant and his counsel alone cannot support a claim of ineffective assistance of counsel." *Raposo v. United States*, No. 01 Civ. 5870 (DAB), 2004 WL 1043075, at *3 (S.D.N.Y. May 7, 2004) (internal quotation marks and citation omitted).

### c. *Counsel's failure to prevent press photography*

O'Donnell claims that his counsel was ineffective because, on several occasions, Simmons "allowed" pictures to be taken by the press, against O'Donnell's wishes. Doc. 1 at 5. Simmons informed him that "pictures by the press were harmless to the case and should be allowed." *Id.* In his § 440.10 motion, O'Donnell stated that he refused to allow the press to print photos of the evidence in the case because "this would hurt the defen[s]e of the case." Doc. 20 at 272. However, O'Donnell does not indicate how the

press photos hurt his defense nor does he "identify any lawful basis upon which counsel could have demanded that the reporter's cameras be confiscated." Doc. 18-1 at 28. Thus, the state court was not unreasonable in its holding that O'Donnell "has not shown that…. he was prejudiced by the fact that the attorney… agreed to have a member of the press take photographs of him." Doc. 20 at 328. Indeed, in the instant petition O'Donnell does not identify any harm or prejudice to his defense due to the press photos.

### d. *Counsel's failure to cite case law*

O'Donnell claims that his counsel was ineffective because he "[d]id no research on the case[,]" "had no grasp of the law" and told the judge during deliberations in pre-trial proceedings that he "'had no cases to cite.'" Doc. 1 at 5.[12] O'Donnell refers to counsel's oral presentation on March 13, 2012 in support of the motion to suppress his statements. Contrary to O'Donnell's allegations, Simmons did not tell the court that he had "no cases to cite" because he did not do any research on the cases. *See* State Court Transcript, Doc. 19 at 130, 146, 160. Instead, Simmons said that he "went on [Lexis] and looked at many of the cases… and there were none that were directly on point for what [his] argument would be." *Id.* at 160. Indeed, the prosecutor supported this ("as defense stated earlier that when he was also looking up these cases many were some cases he looked at, and these cases are not directly on point[.]"). *Id.* at 169.

To the extent that O'Donnell alleges that Simmons literally "did no" research and had no grasp of the law, that is easily belied by the record. *Id.* at 176–79, 181–82 (Simmons citing to case law in his closing statement). And, to the extent O'Donnell

---

[12] O'Donnell points out that his counsel is listed as "Mr. Delaney" for this exchange in the state court transcript. This is likely a typographical error.

argues that counsel overlooked a case that would have been helpful to his defense, he fails to show that such a case exists.  Thus, the state court did not act unreasonably in rejecting this claim.

  *e.  Counsel's failure to call certain witnesses*

  O'Donnell claims that Simmons' failure to call "important witnesses to the stand" constituted ineffective assistance of counsel.  Doc. 1 at 5.  He only mentions one witness, the prosecutor in his case, Robert Walker, who was also present during O'Donnell's video interview.  O'Donnell claims that Walker "actively questioned" him during the video interview.  *See* § 440.10 Motion, Doc. 20 at 338.  The Court finds that the state court did not err in rejecting this claim of ineffective assistance because "[t]he decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess."  *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998).

  Further, O'Donnell offers no information regarding what testimony would have been elicited from Walker that would have helped his defense.  *See Perez v. United States*, No. 09-CR-1153 (MEA), 2017 WL 1628902, at *8 (S.D.N.Y. May 1, 2017) (holding that Plaintiff's vague and unsupported assertions that unnamed witnesses would have provided unspecified helpful testimony are wholly insufficient to make out a prima facie case that counsel performed deficiently in failing to call these witnesses).

  In his reply to the Respondent's brief, O'Donnell does specify another witness, Detective Edward Lozada, who O'Donnell alleges was the supervisor of Officers Thompson and Sivori.  Doc. 25 at 16.  Lozada administered the first Miranda warnings, in which O'Donnell affirmed that he did not wish to be questioned by the police.  *Id.*

O'Donnell alleges that "in the indictment [] Lozada testifie[d] that the two officers [were] not assigned to '[burglary] detail.'"  *Id.*  The Court has conducted a review of the state record and did not find any such testimony.  *See* Indictment, Doc. 20 at 43–54; *see also* People's Voluntary Disclosure Form, Doc. 20 at 61–68.

   *f.* *Counsel's failure to object to the video recorded interview*

   O'Donnell claims that Simmons' failure to "argue against the video interview and the prosecutor[']s violation of Miranda in pre-trial deliberations" also constituted ineffective assistance of counsel.  Doc. 1 at 5.  He is wrong.  As stated in the February 2017 denial of O'Donnell's § 440.10 motion, "the complaint that the attorney failed to object to the admission of defendant's statement is untrue, as he moved to suppress the defendant's admissions on constitutional grounds, and prevailed at the Huntley hearing as to one of them."  Doc. 20 at 37.  Moreover, O'Donnell has not shown that not moving to suppress at the pre-trial stage and instead doing so at the Huntley hearing was below professional standards or that he was prejudiced by the behavior.  Thus, the state court acted reasonably in rejecting this claim.

   *g.* *Counsel's attempt to coerce O'Donnell*

   O'Donnell alleges that his counsel "tried to coerce a plea" from him.  Doc. 1 at 5. On the record it is clear that Simmons advised him to pursue a plea deal, but honored O'Donnell's wishes to proceed to trial.  *See* State Court Transcript, Doc. 19 at 2–3 ("[Mr. O'Donnell] wishes to go forward with the hearing and the trial…. My suggestion is that a plea should be taken in this case, but my client wishes to go to trial.").  Thus, O'Donnell was not coerced into accepting a plea deal; he ultimately proceeded to trial.

O'Donnell also alleges that the attempted coercion is connected to Simmons' collusion with the prosecution.  Doc. 25 at 16 (O'Donnell alleging that Simmons' suggestion that the District Attorney will show leniency if there is "anything else [he] can offer" "shows that counsel has been 'fishing'" for the prosecution).  This Court agrees with the state court's findings that O'Donnell's allegations that Simmons colluded with the prosecutor lack any factual basis.

### h.  Counsel's failure to move to consolidate the charges

O'Donnell claims that counsel's failure to "accept further pre-trial remedies or to consolidate duplicate charges when offered by the Court" constituted ineffective assistance of counsel.  Doc. 1 at 6.  To the extent O'Donnell is referring to the pre-trial exchange between the prosecution and Judge Stone in which they discussed which charges would be submitted to the jury, the Court finds that Simmons' decision to not intervene did not demonstrate ineffectiveness because this was a reasonable decision and O'Donnell was not prejudiced.  *See* State Court Transcript, Doc. 19 at 140–142.  It is clear from the record that the state court was contemplating dismissing some of the charges ("[I]t doesn't change anything if he is convicted of one or many because they merge as a practical matter.").  *Id.* at 142.  Ultimately, the state court exercised its discretion to dismiss two charges—possession of ammunition and possession of a stun-gun.  *See* State Court Transcript, Doc. 19-2 at 56–57.  Therefore, the state court was not unreasonable in declining to grant relief under Strickland.

### i.  Counsel's failure to review Rosario material

O'Donnell claims that Simmons failed to review the Rosario material because he asked the prosecutor for a copy of the material during cross-examination.  Doc. 1 at 6.

23

On April 20, 2012, during the trial, it came to Simmons' attention that he had not received a copy of a report prepared by the evidence collection team. *See* State Court Transcript, Doc. 19-1 at 380. The prosecutor provided Simmons with his copy of the report for use during the defense's cross-examination. *Id.* at 381. There is no indication on the record whether the prosecutor provided the report to the defense and Simmons overlooked it or whether Simmons correctly noted that he never had the report. In either event, this does not demonstrate that counsel was ineffective. Even if Simmons did overlook the report, he cured the mistake by conducting an effective cross-examination, and O'Donnell fails to explain how this event prejudiced his defense. Therefore, the state court was not unreasonable in denying O'Donnell's ineffective assistance claim on this ground.

    *j.   Counsel's lack of strategy*

O'Donnell claims that Simmons "had no effective strategy for the defense" and that "even in closing statements did not pursue [O'Donnell's] best interest." Doc. 1 at 6. But Simmons did have a strategy—for O'Donnell to accept a plea bargain and avoid the trial, because the prosecution's case was strong—which O'Donnell rejected. Doc. 19 at 2 ("It's my belief that the District Attorney has a very strong case against my client, and [] my suggestion is that a plea should be taken in this case, but my client wished to go to trial."). *See Saxon v. United States*, 695 F. App'x 616 (2d Cir. 2017) (holding that defense counsel's conduct of advising defendant to accept plea deal was a reasonable trial strategy).

That Simmons could not secure an acquittal in light of the strong evidence against O'Donnell is not proof of an ineffective assistance of counsel. *See Miller v. Harris*, 460

F. Supp. 1013, 1017 (S.D.N.Y. 1978) (declining to hold counsel ineffective where "[w]hat petitioner really complains of is that his lawyer did not contrive an untenable defense for him in the face of overwhelming proof of his guilt"); *see also United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir. 1963) (rejecting theory that "the very fact of [the petitioner's] conviction" is "proof of his counsel's incompetence"). Accordingly, the state court was not unreasonable in rejecting this claim as ineffective assistance of counsel.

   k.   *Counsel speaking loudly during an attorney-client conference*

O'Donnell claims that Simmons "tried to incriminate [him] in open court by questioning him at the defen[s]e table loudly." Doc. 1 at 6. He seemingly refers to an exchange during the trial in which O'Donnell was given the choice of either remaining in the courtroom to be identified by Officer Sivori, or of stipulating that he was the person whom Officer Sivori arrested. *See* State Court Transcript, Doc. 19-1 at 254. O'Donnell chose the former. During his discussion with his counsel, O'Donnell alleges that Simmons asked him "Why did you have all those weapons?" loudly enough for the trial judge to hear. *See* § 440.10 Motion, Doc. 20 at 268 ¶ 69. This comment was not recorded by the court reporter, and as O'Donnell notes, he did not respond to the question. More importantly, the jury was not present at the time. *See* Doc. 19-1 at 255. Thus, even if these events did occur as described by O'Donnell, there is no indication that it prejudiced his defense. Accordingly, the state court was not unreasonable in rejecting this claim.

  *l. Counsel's entry of a "secret plea"*

  O'Donnell claims that Simmons "[e]ntered a 'secret' guilty plea according to Sentencing and Commitment papers which [he] and the District Attorney were actively pursuing." Doc. 1 at 6. As discussed above, the Sentencing and Commitment papers contained a typographical error stating that O'Donnell pled guilty. Doc. 20 at 9–10. Nevertheless, there is no question that O'Donnell was convicted following a jury trial. Moreover, O'Donnell does not indicate that this error caused him any prejudice whatsoever. This Court agrees with the state court that this contention—that Simmons was colluding with the prosecution—lacks any factual basis. Doc. 20 at 328.

  *m. Counsel's failure to present argument at sentencing*

  O'Donnell claims that Simmons "had no arguments during the sentencing" and that this resulted in him being "sentenced to the maximum amount for the charges." Doc. 1 at 6. However, the record reflects that Simmons pressed for a lenient sentence, arguing that there was no evidence O'Donnell was plotting to use his weapons unlawfully and that he had no prior record. *See* State Court Transcript, Doc. 19-2 at 175. Simmons requested that O'Donnell be given a sentence of five years to run concurrently. *Id.* at 176. Thus, the state court currently found that this claim also lacks any factual basis. Doc. 20 at 328.

  *n. Counsel's conflict of interest*

  Lastly, O'Donnell claims that Simmons "had a 'conflict of interest' in that a conviction would make City Hall and the District Attorney's Office look good during an election year[.]" Doc. 1 at 6. O'Donnell does not identify why exactly he believes that Simmons had any interest, other than that as a citizen, in the New York City local

26

elections.  But even if Simmons did have an opinion in the local politics at the time and

O'Donnell somehow discovered this interest, that opinion would not constitute an actual

conflict.  *See Oyague v. Artuz*, 274 F. Supp. 2d 251, 263 (E.D.N.Y. 2003) (finding no

actual conflict where counsel for client accused of armed robbery was simultaneously

running for office on a "Tough on Crime" platform).  This Court agrees with the state

court's finding that the contention that Simmons had a conflict of interest lacks any

factual basis.  Doc. 20 at 328.

### C.  Service of the Opposition Papers in Response to O'Donnell's Motion to Vacate the Judgment

O'Donnell claims that the District Attorney's failure to submit a brief in

opposition to his § 440.10 motion "violated [his] right to rebuttal."  Doc. 1 at 7.  The

record reflects that the People's written response to the § 440.10 motion was served on

O'Donnell via U.S. mail on September 26, 2016.  *See* Affirmation in Support of Service

by Mail, Doc. 20 at 323.  In the event that O'Donnell did not receive service, this would

be a claim under state law and "federal habeas corpus relief does not lie for errors of state

law[.]"  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Word v. Lord*, No. 4 Civ. 328

(LAP) (HBP), 2009 WL 4790222, at *6 (S.D.N.Y. Dec. 11, 2009) "[M]ost federal courts

have rejected due process claims arising out of the conduct of state courts in post-

conviction proceedings, holding that such claims are also not cognizable on habeas

review."  (internal quotation marks and citation omitted).  Accordingly, this claim is not

cognizable by this Court.

### D.  Unlawful Search and Seizure Claim

O'Donnell argued that he was subject to an unlawful search and seizure by the

arresting officers in his appeal to the Appellate Division.  Doc. 20 at 113.  "[W]here the

State has provided an opportunity for full and fair litigation of a Fourth Amendment

claim, a state prisoner may not be granted federal habeas corpus relief on the ground that

evidence obtained in an unconstitutional search or seizure was introduced at his trial."

*Stone v. Powell*, 428 U.S. 465, 494 (1976).  Because O'Donnell cannot show that "that

[he] was denied an opportunity for a full and fair litigation of [his] claim at trial and on

direct review," *id.* at 495 n.37, this Court cannot grant federal habeas corpus relief.

Accordingly, this claim is not cognizable by this Court.

### E.  Violation of *Miranda* Rights Claims

O'Donnell claims that his *Miranda* rights were violated "after he indicated, in

writing, that he did not wish to be questioned by the police."  Doc. 1 at 8.  The trial court

found that in light of the "significant attenuation" between the first and third interviews,

as well as the fact that O'Donnell was re-Mirandized before the third interview, the video

recorded interview was not obtained in violation of his *Miranda* rights.  *See* State Court

Transcript, Doc. 19 at 186–94.  O'Donnell failed to raise this claim in his direct appeal.

*See generally* Appellate Division– First Department, Brief for Defendant-Appellant, Doc.

20 at 105.  Accordingly, O'Donnell is procedurally barred from raising it in a state post-

judgment motion.  *See* CPL § 440.10(2)(c) (no relief for claims unjustifiably not

presented on appeal).

Nevertheless, this Court agrees with the trial court that this claim is meritless.

Under *Mosely,* where a subject invokes the right to remain silent but subsequently

voluntarily makes a statement to police, the question becomes whether his "right to cut

off questioning was scrupulously honored" such that he could "control the time at which

questioning occurs, the subjects discussed, and the duration of the interrogation."

*Michigan v. Mosley*, 423 U.S. 96, 103–04 (1975).  After O'Donnell was first *Mirandized* by police he "said he didn't want to talk to them, they stopped talking to him."  *See* State Court Transcript, Doc. 19 at 192.  The statement elicited the second time O'Donnell was interrogated, more than five hours later, about "an entirely different issue," was suppressed because Detective Stamm did not re-issue *Miranda* warnings.  *Id.* at 193. Nineteen hours later, police re-issued the *Miranda* warnings and O'Donnell expressly waived them.  The resulting statement was video recorded.  *Id.*  These statements were not suppressed because O'Donnell was re-issued the *Miranda* warnings and there was significant attenuation in terms of time.  O'Donnell argues in his reply that he showed "signs of extreme fatigue" in the video and that "through police [badgering] … [he] was not in a condition to make 'free and rational choices.'"  Doc. 25 at 23.  However, the trial court noted that "it's clear from watching the video that [O'Donnell] is an intelligent man, and whatever he was doing and why he made these statements seem to be part of his decision as to how to play out the game itself."  *See* State Court Transcript, Doc. 19 at 191.  The Court agrees with the trial court that no *Miranda* violation occurred with respect to the video statement.

### F.  Jurors' Deliberations

O'Donnell claims that a mistrial should have been declared because "members of the jury discussed the case during an [adjournment], outside of the Court."  Doc. 1 at 9. Simmons was made aware of a conversation between two jurors in a courthouse elevator, and on this basis moved for a mistrial, arguing that this constituted a form of deliberation without the required quorum of jurors.  *See* State Court Transcript, Doc. 19-2 at 138. After questioning both jurors, the trial judge ruled that the exchange, while ill advised,

did not constitute deliberations, and denied the motion.  *Id.* at 150.  On direct appeal the Appellate Division agreed, stating that "[t]he court made a thorough inquiry, and the record supports its finding that the conversation between the two jurors did not fall within the category of deliberations."  *See People v. O'Donnell*, 122 A.D.3d 475 (1st Dep't 2014); *see also* CPL § 310.10.

Because this is a claim arising under CPL § 310.10, a state law, it is not cognizable on federal habeas review.  *Garcia v. Burge*, No. 07 Civ. 2974 (HB) (FM), 2008 WL 627508, at *9 (S.D.N.Y. Feb. 28, 2008), *report and recommendation adopted*, No. 07 Civ. 2974 (HB) (FM), 2009 WL 102142 (S.D.N.Y. Jan. 15, 2009).

### G.  Unjust Sentence

Lastly, O'Donnell claims that that he was "unfairly charged with the maximum terms of confinement for the majority of the charges against him" despite being "a first time offender, with no felony or misdemeanor charges."  Doc. 1 at 9.  Similar to his jury claim under CPL § 310.10, this is a state law claim that is not cognizable on federal habeas review.  *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 283–84 (W.D.N.Y. 2007) (finding that petitioner's claim that sentence was "harsh and excessive" does not raise constitutional question where it was within limits proscribed by New York's Penal Law).

### H.  O'Donnell's Other Objections to the R&R

O'Donnell also argues that:  (1) the People of the State of New York are the proper respondents in this matter; (2) the officers' testimony at the suppression hearing

was "pure conjecture" and a "total fabrication" that should not have been relied upon; (3) his petition alleged several violations of his constitutional rights.[13]  Doc 39 at 1–5.

The Court finds that these objections are irrelevant.  As to the first objection, the name of the respondent did not form the basis for Judge Freeman's recommendation to deny the petition.  As to the second objection, the R&R did not take a position on the officers' credibility, but rather summarized the testimony as part of the "factual background" section.  Further, the testimony was not relied upon in dismissing the petition.

Lastly, O'Donnell objects to the report's conclusion that a certificate of appealability should not be granted on the basis that he cannot show that he has been deprived of his constitutional rights, arguing that he has alleged several constitutional violations by state authorities.  For the reasons discussed above, his substantive claims fail to demonstrate that his constitutional rights were violated.

## IV.   CONCLUSION

For the reasons set forth above, the Court adopts Magistrate Judge Freeman's R&R in its entirety, and O'Donnell's petition for a writ of habeas corpus is DENIED.

As O'Donnell has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in

---

[13] In his objection to the R&R, O'Donnell also states that he would "like to amend his use of the phrase 'harsh and excessive' … and change this for the phrase 'cruel and unusual' … which is a denial of his 8th Amendment rights under the U.S. Constitution."  Doc. 39 at 5.  The Court rejects this entirely new and untimely claim.  *See Inoa v. Smith*, No. 16 Civ. 2708 (VEC) (JLC), 2018 WL 4109102, at *2 (S.D.N.Y. Aug. 29, 2018) ("[w]hen the claims that a petitioner seeks to add to a habeas petition are untimely under the one-year statute of limitations provided by the AEDPA the amendment is futile, and leave to amend should be denied.") (quoting *Sookoo v. Heath*, No. 09 Civ. 9820 (JGK), 2011 WL 6188729, at *3 (S.D.N.Y. Dec. 12, 2011) (citations omitted)).

good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to close this case, and mail a copy of this order to Petitioner.


Dated:   May 25, 2023
         New York, New York

_____
            EDGARDO RAMOS, U.S.D.J.